Good morning, Your Honors. I want to thank you for the opportunity to address the Court in this most important case. My name is Bruce Janke. I'm the attorney for the appellant, Dr. Mitchell Pierce. If it pleases the Court, I have a very brief opening statement, which will take probably less than four minutes, and I would like to reserve the rest of my time for rebuttal. In the District Court's order granting three of the motions to dismiss, Judge White said, and I quote, This lawsuit is the latest chapter in a seemingly never-ending dispute. I'd like to point out to the Court that it is the defendants, and not Dr. Pierce, who have caused this dispute to continue for so long. First, Defendant Stuart Love Levin Fultmanguy filed a complaint against Dr. Pierce with the Chiropractic Board. The Board, incidentally, took a year and a half to commence the hearing. Dr. Pierce prevailed. Every finding of fact against Dr. Pierce was reversed by the Superior Court. Second, Ms. Stuart, Mr. Fulton, Mr. Guy filed a civil action against Dr. Pierce. Dr. Pierce prevailed. Next, Ms. Levin, Mr. Fulton, and Mr. Guy recruited Mr. Alexander to prosecute a second civil action on the same claims as the first action. Dr. Pierce prevailed. Finally, some of the defendants conspired to file an accusation against Dr. Pierce with the Acupuncture Board. Dr. Pierce prevailed. Various groups of defendants in this case have persecuted Dr. Pierce for ten and a half years. Through several interlocking conspiracies, they maliciously pursued him in order to cover up their own misdeeds and to ruin Dr. Pierce. Dr. Pierce has been accused in this case of everything from abusing his patients to murder and arson. And unfortunately, defendants' efforts against Dr. Pierce have been successful. Even though Dr. Pierce's licenses were ultimately restored, the charges alone rendered him uninsurable and forced him to close his practice. At the age of 44, Dr. Pierce had to retrain for a different occupation and now works as a real estate agent. The traumatic events have drastically reduced Dr. Pierce's potential income and severely impacted his ability to provide for his wife and two young children. Unfortunately, the trial court and the defendants below adopted, have adopted a very dismissive and condescending attitude that has permeated this case since its inception. They have treated Dr. Pierce as some sort of a latter-day Don Quixote who insists on tilting at windmills instead of submitting to their malicious persecution and attacks. This underlying tone is expressed in the court's orders in which Judge White expressly refused to accept, and I quote, the seemingly unbelievable allegations in the complaint, stating that they had, quote, no factual basis. Elsewhere, the court stated that, quote, some of the facts pleaded seem unbelievable and that, quote, it is difficult to accept plaintiff's allegations. Dr. Pierce understands that it is difficult to believe that such multiple malicious conspiracies occurred in our judicial system and that the system has been so badly abused. But Dr. Pierce seeks only an opportunity to put his proof before a trier of fact. There are several instances cited in appellant's brief where the trial court either assumed facts, either assumed that facts that are pleaded in the First Amendment complaint are false or assumed that facts not pleaded in the complaint are true. The point is that if Dr. Pierce accomplishes nothing else in this hearing, he implores the Court to at least adhere to the strict rule concerning motions to dismiss under Rule 12b-6. That for purposes of such a motion, the trial court and this Court must accept the pleaded facts as true and may not assume facts that are not pleaded. Now, it may well be that Dr. Pierce will be unable to prove the facts pleaded in his complaint, but that question may not be decided here. Dr. Pierce alleges that he has suffered extreme and debilitating injuries at the hands of the defendants. He is entitled to his day in court to prove his case. Thank you. Scalia. Let me ask just briefly if Judge White, in his five, I think five, rulings addressing various iterations or stages of motions to dismiss, did cite to the complaint and I just want to go back. You mentioned malicious prosecution and just touched upon that briefly. Didn't plaintiff allege or didn't appellant allege that the board proceeding was instituted by the chiropractic board for its own reasons, the views of the members of that board? And if that's the case, how could that provide a basis for a malicious prosecution claim as to the other named defendants? Justice Perot, thank you for raising that issue, because it is very important. First of all, defendant's conduct doesn't have to be, even if the board did have this ulterior political purpose or whatever you want to call it concerning the proper scope of chiropractic practice, the conduct of the defendants doesn't have to be the sole cause of the prosecution as long as it's a substantial factor. Now, the complaint alleges that, this is rather important, that the complaint alleges conduct by these complaining witnesses far beyond the initiation of the complaint with the board. The complaint alleges that they conspired with the investigating officer to submit   of the complaint with the board. But to do that, counsel, you have to allege facts that a person insists or urges that's what the law requires, insists or urges the continuation of a proceeding. Have you done that? And if so, tell me in what paragraphs you've done that. For instance, in the cause of action No. 2, it says, How can Berman continue a prosecution before one of the boards? He's not the board. The board does that. You have to allege facts which show that he insisted and urged the continuation of the prosecution. That you haven't done. Justice, may I? No, no. Not justice. We're all judges. As we say, there's no justice in the Ninth Circuit. I apologize, Your Honor. In any event, I believe that we've cited numerous cases. No, no, no. Stop. That show. Not numerous cases. Where do you allege that Berman insisted or urged the continuation of the board proceeding? I don't. I doubt whether the complaint actually uses those specific words, Your Honor. Well, facts which amount to those words. Did you allege that Berman paid off the members of the board? Of course not. Of course not, Your Honor. We allege that. Threatened them? No. Or had them over for a barbecue and leaned on them somehow? I believe that our allegations concerning Dr. Berman are limited to his preparation of a fabricated report, again, which the Acupuncture Board then based its decision to prosecute. Your idea is that so long as his act or omission is a substantial factor in your conclusory allegation that it caused the board to continue, that's sufficient? I don't believe it's conclusory, Your Honor. Under the law, that's what the board's any administrative board bases its decision on, is the report, the report of its investigator. You're assuming that they accepted the report as truthful. I can't see how they could have proceeded had they not. That's how the administrative courts work or the boards work. Did they make a finding that our only evidence against Dr. Pierce is the Berman affidavit? Well, I don't know that the Acupuncture Board ordered in front of me, but again, I don't see that was the only investigation that they did. I don't understand how they could have used anything else. It's a question of whether you allege the proper ultimate facts in your complaint. Well, Your Honor, perhaps when I come back from my rebuttal, I would have that page citation for you.  Otherwise, I'm going to reserve. Thank you, Your Honor. Okay. Good morning. Michael Reedy for Appellee Richard Alexander. May it please the Court, we did have a little further discussion about splitting up the time for appellees, and I will use in the range of 8 to 10 minutes if necessary. Mr. Funk will use 3 to 5 minutes. Mr. Blake for the State Defendants will use 2 minutes. In regard to the length of these proceedings, I agree with learned counsel that it's unfortunate they have gone on for as long as they have, but it is time for them to end. Judge White issued a detailed, well-reasoned decision. I'm most familiar with his decision regarding Mr. Alexander, but it's my understanding that all of the decisions were based primarily upon the doctrine of res judicata. And one of the things that happened in lower court is after Judge White's initial decision, which was made in 2004, he granted plaintiff leave to amend. And in his order, he specifically stated not to essentially restate the same allegations. Plaintiff filed a new complaint, Judge White, and in the new complaint, there were additional allegations about fraud and duress concerning the settlement agreement of the two State court actions that are really the backbone of Judge White's decision on res judicata. And once again, Judge White came to the same conclusion that res judicata, excuse me, res judicata barred Mr. Pierce's complaint. And one of the specific statements, allegations in the State court actions that I think is very instructive was in the first State court action, which initially was filed against Ms. Stewart, I believe. And in paragraph 10 of that action, and this is in the excerpts of record prepared by appellant at page 178-54, paragraph 10, the plaintiff alleged that damages were incurred in defending against an accusation before the State board of chiropractic examiners arising directly from said defamatory publications, including attorney's fees, costs and expenses. I mean, that is malicious prosecution. That's raising allegations about allegedly wrongful statements and wrongful conduct that occurred before the chiropractic board. Some years later, those claims were settled, as was the second State court action. And the second State court action had, I believe ---- Well, they were settled. I mean, Dr. Pierce was exonerated, was he? Well, as part of the settlement proceedings. Attorneys for the defendants in those State court actions agreed that they would assist Mr. Pierce in the licensing proceedings that were occurring both before the chiropractic board and the acupuncture board. I believe the chiropractic board specifically cited evidence presented by Tom Cullen, who was Mr. Alexander's attorney, which they stated as particularly compelling in allowing Mr. Pierce to have his license restored. That was part of the settlement agreement. And in Judge White's second order, he specifically cited the doctrine of judicial estoppel. Look, there was a high level of conflict between these parties. They came into a mediation. Let's settle everything. They settled everything, all the defendants, all the causes of action. And specifically, as part of that agreement, the defendants stated that they would do everything they could to restore Mr. Pierce's licenses. And they did that and they succeeded in doing that. And they were an active part of doing that. And in return, they were sued several months later in Federal court for essentially the same causes of action and the same allegations. As Judge White found. So I think that the res judicata holding by Judge White is dispositive of this matter. In addition, as to Mr. Alexander specifically, there were also allegations about malicious prosecution. The malicious prosecution allegations are defeated under the anti-SLAPP doctrine, code of civil procedure, section 425.16. Both in the lower court and here in the appellate court, appellant has made absolutely no showing of a probability of prevailing on the anti-SLAPP claim, which he would have to do to defeat the malicious prosecution claims. On the remaining claims against Mr. Alexander, defamation, I think this is cause of action number 18. I think it's defamation in connection with civil rights. Excuse me, defamation in connection with the section 1983 violation. The defamation that's alleged are newspaper articles and letters that were written in 1994 and 1995. This is a one-year statute of limitation. Those claims are clearly barred. The 27th and 28th causes of action for conspiracy, Judge White ruled, I believe, correctly that res judicata applies, that there was a failure to allege that the parties were acting under color of State law. And finally, on the RICO claims, which for Mr. Alexander are claims 29 and 31, again, res judicata applies, statute of limitations applies. There are no RICO allegations against Mr. Alexander that occurred prior to March of 1998. It's a four-year statute of limitations. There are no allegations that would bring those claims under the jurisdiction of a Federal court. Unless the Court has specific questions, I will turn the matter over to Mr. Funk. Okay. Thank you. Thank you. Good morning. Bruce Funk on behalf of Ms. Sheffer. The issue to distinguish from Ms. Sheffer is the order that dismissed her case did not involve res judicata. She was not part of any of the State court actions. She got dragged in here with. Pardon me. Who do you represent? Bindi Sheffer. Thank you. She was dragged into Federal court when the complaint was filed. Judge White, I think, gave a thoughtful, reasoned opinion and talked about the four counts that involved her, the malicious prosecution. It was clear on the basis of the complaint that she did not cause or instigate the chiropractic proceedings to go forward. She was mainly a witness. Counsel, with respect to count 10 on the malicious prosecution, when did you hear that? When did the actions take place that were alleged? As to count 10? Yes. Well, I believe that the hearing on that matter was in 1996. Would the statute of limitations bar this as well? Yes, I believe so. Are there any allegations there that would cover any period that would approach the limitations period? I believe not, not in the first amendment complaint. And so the cause of actions for 10 and 12, which both rely on the malicious prosecution and then the conspiracy under 27 and 28, are the same issue, basically alleging it was conspired to maliciously prosecute. Are you arguing that claim 12 is waived on this appeal now? Are you persisting in that argument? In our brief, I argued that claim 12 is waived, but in abundance of caution, if the Court's going to consider that, I'm relying on Judge White's order and on that issue as well. Judge White dismissed this one on the basis of the statute of limitations. Is that correct? On count 12. On count 12. Excuse me.  he dismissed it on the theory that, one, under 1985, plaintiff failed to allege that Schaeffer's motivated by racial or otherwise class-based animus. And then under the state claim, under 1983, he dismissed it on absolute immunity for liability for civil damages under 1983. Now, the appellant moves to strike Schaeffer's excerpts of the supplemental excerpts of record, which include the ______. I'm not concerned about that. All right. All right. Thank you. Unless there are any other questions directed to this issue or appellees' motions for sanctions, I'll turn it over to the Co-Counsel. Thank you. Blake. Thank you. It sounds like you're being announced outside. That brings us to the subject of court security. I think in this case, it's an outstanding example of proving that the best defense is a good offense.  I think that's part of the State's effort at disciplining him for professional malpractice, professional misconduct. He was vindicated, wasn't he? Pardon me? He was vindicated. He was exonerated. Eventually he was, Your Honor. And I think that was in part due to the very vigorous effort at distracting the prosecutors and intimidating the witnesses to some extent. So you're repeating some of the charges he claims are defamatory, and you're doing so with the judicial immunity with which you think you're clothed? Yes. I think, in fact ______. The State is not going to defend, then, the actions of the State courts? The State court action is correct. I mean, it's final. It's not my intent to re-litigate the matter of Dr. Pierce's licenses. I just believe that a large part of the heat around this case came from an effort to strike back at the prosecutors. As Judge White noted in his order, practically everybody that was involved in any way was named as a defendant in a civil lawsuit and forced to defend themselves, which was a very stressful counterattack. Who do you represent, counsel? Pardon me? Who do you represent? The State defendants, Your Honor, basically. A large number of individuals. I could name them if you wish. I note also that the recent cases cited to the court last week by counsel, again, raise issues of prosecutorial immunity, and Auguste v. Aldreden, which was cited last week to the court, is factually distinct. That was a criminal prosecution where a State court prosecutor defied the order of a State court judge to defend a habeas action and was found not immune, which is quite distinct from the situation of Carol Romeo, who merely alerted the presiding administrative law judge that there was a court security problem, in her opinion. And again, I point out that it's quite distinct to raise a court security issue from defying orders not to serve search warrants and to have them served. Are there any other questions? Mr. Funk, I would like you to tell me that case that you cited that came out last  Give me the name again. That was the case that was cited by opposing counsel, Your Honor, and it was Auguste, A-U-G-U-S-T-E. Oh, I've got it here. Auguste v. Aldreden? Yes, Your Honor. Okay. Got it. Thank you. Thank you, counsel. All right, Mr. Janke. Thank you, Your Honor. I want to start by expressing my shock. Mr. Blake's bringing up a matter completely contrary to the allegations of the complaint that Dr. Pierce supposedly intimidated witnesses. And as far as striking back, I would submit that Prosecutor Romeo deserves to be stricken back at. The prosecutor went and lied to Judge Liu to obtain a search order. Counsel, look. Then lied to Judge Astell. As long as we've got Judge Romeo, let's start with count number one in the few minutes that we've got. When were at what point did the allegations that cover claim one start? When did those events take place? Well, let me see. This is a due process claim under Section 1983 for fabricating evidence. I would say that they began when Ms. Romeo initiated the accusation. And that would have been what year? Oh, boy. Why don't you tell me what year? Okay. This was dismissed on the basis of the statute of limitations. You have one year statute of limitations. I understand that, Your Honor. I just don't know that particular data when she initiated the action. Do you? Okay. Well, it was certainly 1995, wasn't it? 1995. So how do you get around the statute of limitations? With respect to the State defendants? Well, I'm just starting with claim number one. Okay. Well, the argument against the statute of limitations in all instances is that the cause of action didn't accrue until Dr. Pierce received his favorable termination. Well, that has nothing to do with fabricating evidence, does it? Well, it does. Because that was the malicious prosecution. That was the ---- But this is not a claim for malicious prosecution. That's a different claim. Claim number one is a claim for fabricating evidence. Well, that's how she maliciously prosecuted him was by ---- Right. But this is not a claim for malicious prosecution. It's a claim for due process violations because she fabricated evidence. That evidence would have been fabricated in 1995. How do you get around a one-year statute of limitations when you didn't bring suit until 2002? Well, I don't mean to argue with the Court, Your Honor, but it's our position that the 1983 causes of action are in the nature of malicious prosecution. That is a well----- You don't say that in your complaint, though, do you? Is that alleged as such in your complaint? I know you referenced that in the reply, the reply brief. But does the amended complaint couch the 1983 claims as malicious prosecution? I believe it necessarily does. Okay. Because the whole ---- see, the whole thing is tied together. The ---- we allege that one of the ways that the prosecutor obtained the decision of the Court was to have Dr. Pierce searched in front of the judge in a case where he had been accused of sexual molestation and abusing witnesses and so forth, and that that was part of the major factor in the decision against him, and that she obtained that search order by multiple lies to the judges, and that, therefore, the cause of action didn't accrue until he obtained his favorable term. What's the constitutional right that you claim was violated under color of law under your 1983 claims in which you say implicit is the malicious prosecution? Well, there's ---- in the first count, it's due process consisting of prejudicing causing prejudice to the ALJ who tried the case. In the second, third, and fourth counts, it's fourth ---- second and third counts, it's Fourth Amendment unreasonable search. There's 30 counts. I don't ---- Counsel, I'm looking at paragraphs 127 of your complaint. This is claim ---- this is count number one, and you said that Dr. Pierce was unable to discover the fact that Romeo had fabricated evidence until April of 2001, and therefore, the claim for damages could not have accrued until April of 2001. Yes. This is a 1983 action. You filed it in August of 2002. That is more than one year after the claim that you make here. So even by your own complaint, you claim that the claim arose in 2001, in April. You're outside the statute of limitations, aren't you, on count number one? I don't have a response for that at my fingertips, Your Honor. Would the like ---- I don't know how much time I have. The Court would like me to proceed. You have about 17 seconds. All right. Let me see if I can make one very important point, and that is that many of the defendants who were the parties who brought these claims, I'm talking about the former patients of Dr. Pierce, they keep repeating that they are immune for their testimony before the board. We agree with that. We have never anywhere in our complaint alleged that they are liable for their testimony. We are saying that they are liable for their pre-hearing fabrication of evidence, which they then supplied to Investigator Sharp, which he then turned over to the board to make their decision. We are not claiming immunity for testimony, but rather for pre-trial fabrication of evidence. Thank you. Okay. All right. Pierce v. Romeo is submitted. And the last case on the docket is National Association of Home Builders v. Norton. Thank you. Thank you. Thank you.
judges: Bybee, Bea, Pro